## MAY YORK *vs.* FREDERICK G. STILES.

### PROVIDENCE—MARCH 13, 1899.

PRESENT: Matteson, C. J., Tillinghast and Rogers, JJ.

21 225
f23 80
21 225
24 537
21 225
26 117

(1) *New Trial. De Minimis non Curat Lex.*

Where the amount involved in a suit is trifling, and it is manifest that a new trial would be to the detriment of both parties, no vital question of principle nor the positive and wrongful invasion of the property or personal rights of another being involved, the maxim "*de minimis non curat lex*" applies, and a new trial will not be granted.

A petition for a new trial is addressed to the sound discretion of the court; where substantial justice has been done, although irregularities may have occurred, or where there has been no palpable failure of justice or the wrong, however palpable, is trivial, such petition will not be granted.

ASSUMPSIT ON BOOK ACCOUNT. The facts are fully stated in the opinion. Heard on petition of defendant for a new trial. New trial denied.

(1)　TILLINGHAST, J. We think the ancient maxim "*de minimis non curat lex*" may well be applied to this case. The amount involved is only four dollars. The action was commenced in the District Court, where upon trial a decision was rendered for the defendant. It was then certified to the Common Pleas Division upon plaintiff's claim for a jury trial. When the case came on for trial the defendant did not appear, and a default was entered, and subsequently the court assessed the plaintiff's damages at the sum aforesaid. The case is now before us on the defendant's petition for a new trial, on the ground that the Common Pleas Division erred in certain rulings regarding the admission of evidence in connection with the assessment of damages on default. We think the petition should be denied. The amount involved is too trifling to warrant the court in sending the case back for another trial. Moreover, whatever the result of a new trial might be, if one should be had, it is manifest that it would be to the detriment of both parties to have one. And as remarked by Ames, C. J., in *Spooner* v. *Leland*, 5 R. I. 352, in speaking of new trials : "Neither courts of law or equity when exercising, as in such cases, a discretion,

exercise it except to some good and useful end." No vital question of principle is involved. The only dispute in the case is as to whether the defendant had the right to deduct from the plaintiff's wages, which were seven dollars per week, certain damages alleged to have been caused by her in running the "extractor" in the defendant's laundry. Such a dispute about such an insignificant matter does not strongly appeal to the judicial discretion of the court.

In *Buddington* v. *Knowles*, 30 Conn. 26, which was a petition for new trial on the ground that the damages, which the jury had assessed at $66, were excessive, Ellsworth, J., in delivering the opinion of the court, said : " It is a sufficient objection to granting a new trial for excessive damages, that the verdict is only for $66, an amount too trivial to warrant the renewal of the controversy, unless courts of justice are kept open to gratify the evil passions of mankind. To grant the defendant's request will be to punish the defendant himself, were it certain that the damages would be reduced on another trial, which, however, it is not, either as a matter of law on the evidence before us, or as a matter of fact. Such a practice we cannot encourage, and we take this opportunity to say that a new trial in such cases should not be asked for, unless the case be one which involves something more than a trifling sum of money."

In *Hyatt* v. *Wood*, 3 Johns. 237, the court said : "It has frequently been decided in this court, that in cases where the damages are trifling, a new trial will not be granted after a verdict for the defendant, merely to give the plaintiff an opportunity to recover nominal damages, and when no end of justice is to be attained by it, though there may have been a misdirection of the judge. The principle stated by the judge in this case was incorrect, but the action is of too little importance to grant a new trial merely for that reason." See also, to the same general effect, *Macrow* v. *Hull*, 1 Burr. 11 ; *Burton* v. *Thompson*, 2 Burr. 664 ; *Fleming* v. *Gilbert*, 3 Johns. 520 ; Hill. N. Tr. 2 ed. 483–4 ; *Roberts* v. *Karr*, 1 Taunt. 493.

A motion for a new trial is practically an appeal to the

sound discretion of the court to prevent a material and palpable wrong. And it is never to be granted if the court can see that substantial justice has been done, notwithstanding irregularities may have occurred. Nor is it to be granted when the failure of justice has not been palpable ; nor where the wrong done, however palpable it may be, is trivial in extent. 16 Am. & Eng. Ency. L. 503. The maxim above quoted, however, is not to be applied in case of the positive and wrongful invasion of another's property or personal rights. *Seneca Road Co.* v. *Railroad Co.*, 5 Hill, 170.

Petition for new trial denied, and case remitted to the Common Pleas Division with direction to enter judgment on the decision.

*John C. Quinn*, for plaintiff.
*E. S. Hopkins*, for defendant.

---

H. RUSSELL TEEL *et al.*, Exrs., *vs.* WILLIAM D. HILTON *et al.*

PROVIDENCE—MARCH 15, 1899.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Wills. Trusts. General Legacies.*

A testatrix made the following provision in her will : " The income to be derived from the $12,000 formerly secured to me by mortgage on the real estate on the southerly side of Broad street and the easterly side of Stewart street in Providence, which mortgage is now paid in part, and the income that may be derived from the proceeds of said mortgage, I give and bequeath to my said daughters I. and S. during the term of their natural lives, each of them to have for her own sole and separate use one equal half part of such income, and the same to be paid by my executors as often as twice in each year to my said daughters respectively and upon the sole and separate receipt of each of them. My said executors shall have power to change the investment of said sum at any and all times, and to sell at public or private sale the securities or property in which it may be invested and to re-invest the proceeds of any such sale in their discretion."

The will gave pecuniary legacies to various legatees, and devised all the real estate specifically. At the time of the execution of the will she was possessed of personal estate equal to the amount of the legacies ; before her death the personal estate was reduced. By another clause of the will legacies to the amount of $12,000 were made payable after the decease of her daughters I. and S. above referred to.

Prior to the making of the will the testatrix received a portion of the principal of the note secured by the mortgage, and invested it partly in a mortgage note and partly in real estate. She also acquired the equity in the estate mentioned in the third clause in exchange for the balance due on the mortgage note.

These investments were claimed by various legatees and devisees under different clauses of the will :—

*Held,* the effect of the third clause .was to create a trust with reference to the $12,000 formerly secured by mortgage on the estate therein mentioned. The duty imposed on the executors and the powers conferred on them were such as appertain to the office of trustees rather than of executors.

(2) *Mingling of Trust Fund.*

*Held,* further, the mere fact of depositing a trust fund in a bank where the trustee already had deposits was not in itself such a mingling of the trust fund as to prevent the tracing of it.

(3) *General Legacies.*

*Held,* further, the fact that legacies aggregating in amount the trust fund were given after the death of the tenants for life, in the absence of express directions that they should be paid out of the trust fund, was not sufficient to convert them from general to specific legacies.

BILL IN EQUITY for instructions. Heard on bill and answers.

MATTESON, C. J.   This is a bill for instructions. The conclusions to which we have arrived are as follows :

(1)   1.  Our opinion is that the effect of the third clause in the will of Sarah P. Blake was to create a trust with reference to the $12,000 formerly secured by mortgage on the real estate on the southerly side of Broad street and the easterly side of Stewart street in Providence. The duty imposed on the executors to pay over the income to the daughters of the testatrix, Isabel and Sarah, during their natural lives, and the powers conferred on them to change the investment of the fund at any and all times, and to sell at public or private sale the securities or property in which it may be invested and to re-invest the proceeds, are such as appertain to the office of trustees rather than of executors. *Grinnell* v. *Baker,* 17 R. I. 44, 49.

2.  The case shows that on August 16, 1889, the administrator on the estate of Alfred S. Potter, one of the mortgagors of the real estate on the corner of Broad and Stewart

streets, referred to above, paid to the testatrix $7,500 on account of the principal of the note for $12,000 secured by the mortgage, and that on October 15th following she made deposits in the following banks in Providence : In the Old National Bank, $4,000 ; in the Peoples Savings Bank, $2,000 ; in the Citizens Savings Bank, $1,500 ; in the latter two of which she already had deposits.

That on December 24, 1889, she purchased a mortgage for $5,000 on the estate of John M. Dean, and on the same day withdrew from the Old National Bank the deposit of $4,000 and $875 from the deposit in the Peoples Savings Bank, which sums, with interest at the rate specified in the Dean mortgage, make up the principal of the mortgage of $5,000.

That on September 17, 1890, the testatrix purchased the Popple Cottage estate at Conanicut Park in Jamestown ; that on the previous day she gave her note for $1,834.23, without interest, to F. A. Cranston, cashier, and pledged as collateral for its payment $1,000 of her deposit in the Peoples Savings Bank and $1,000 of her deposit in the Citizens Savings Bank, which sums were afterwards drawn by the payee of the note.

As there is no evidence to show the receipt by the testatrix of moneys from other sources between the payment to her of the $7,500 by the administrator on the estate of Alfred S. Potter, on August 16, 1889, and the deposits made by her on October 15th following, we think it is a reasonable inference that the moneys thus deposited, aggregating precisely $7,500, were the moneys so paid to her and a part of the proceeds of the $12,000 mortgage. This being so, our opinion is that it is satisfactorily shown that the Dean mortgage and the Popple Cottage estate, for which $7,000 of the $7,500 were paid out of the moneys so deposited, are to be regarded as a part of the trust fund of $12,000 constituted by the third clause of the will. The mere fact that the testatrix already had deposits in the Peoples Savings Bank and the Citizens Savings Bank when she made the deposits in these banks mentioned above was not such a mingling of the fund with other property of the testatrix as to prevent the tracing of the deposit as a part of the proceeds of the mortgage for $12,000.

3. The Popple Cottage estate having been purchased with a part of the proceeds of the mortgage for $12,000, and being a part of the trust property under the trust of the third clause, neither Florence B. Teel, the devisee under the fifth clause of the will, nor the residuary devisees, took any interest in that estate. Though the devise in the fifth clause to Mrs. Teel is of all the testatrix's real estate on the island of Conanicut in Narragansett Bay, it goes on to specify of what that estate consists, and the Popple Cottage estate is not embraced within the specification, as indeed it could not have been, since it was not purchased by the testatrix until long after the date of the will. The devise to the residuary devisees is limited to the estate remaining after all the provisions of the will have been carried out.

(3)   4. The bill shows that subsequently to the payment of the $7,500 on the $12,000 mortgage the testatrix acquired the equity of redemption in the mortgaged estate on the corner of Broad and Stewart streets in exchange for the balance of $4,500 due on that mortgage. It further shows that the personal estate left by the testatrix, exclusive of the Dean mortgage, is insufficient for the payment of the general legacies given by the will, and that all of her real estate, except the Broad and Stewart street estate and the Popple Cottage estate, have been specifically devised. In this state of facts the questions arise whether the legacies mentioned in the twelfth clause of the will, which are made payable after the decease of the daughters Isabel and Sarah, are to be regarded as general legacies ; and, if the personal estate outside of the trust constituted by the third clause is insufficient for the payment in full of all the general legacies, whether they shall abate ratably with the other legacies. We think the legacies given by the twelfth clause are to be regarded as general legacies. The will contains no express direction that they shall be paid out of the trust fund created by the third clause, the income of which is paid to the daughters Isabel and Sarah, and the only ground for such a claim is the facts that these legacies aggregate $12,000 and are payable on the decease of the daughters. These circumstances can give rise,

at most, merely to an inference that the testatrix expected that the payment of them would be made from that fund. But she also, when she made her will, equally expected that her personal estate outside of the trust fund would be sufficient for the payment of the other general legacies given in the earlier clauses of the will ; and if these must abate, we think that all should abate.

We therefore answer the specific requests for instructions contained in the bill as follows :

1.   That the income from the $5,000 invested in the Dean mortgage, the net income from the estate on the corner of Broad and Stewart streets, and the net income of the Popple Cottage estate, should be paid over to Isabel J. Hicks and Sarah E. Hilton during their natural lives.

2.   That the complainants have power to manage the Broad and Stewart street estate and to receive the income and pay therefrom the necessary and proper expenses of management, accounting to Isabel J. Hicks and Sarah E. Hilton for the net income during their lives.

3.   The executors under the third clause of the will have the power to sell the Broad and Stewart street and the Popple Cottage estates, or either of them, for re-investment, in their discretion.

4.   The corpus of the trust fund, of whatever it may consist, remaining on the death of Mrs. Hicks and Mrs. Hilton, is to be applied to the carrying out of the provisions of the will, to wit, the payment in full of the legacies which may then remain unpaid in whole or in part ; and after all the provisions of the will have been carried out, whatever remains, if anything, will pass to the residuary legatees and devisees.

5.   The Popple Cottage estate, as already stated, did not pass to Florence B. Teel under the fifth clause of the will.

*Edwards & Angell and Albert Gerald,* for complainant.

*John C. Pegram, Benj. W. Smith, McGuinness & Doran, Frank L. Hinckley, Frederick E. Carpenter, Francis Colwell, and Albert A. Baker,* for respondents.